UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RENAISSANCE MKE,**

    Plaintiffs,

    v.                                                       Case No. 25-CV-807-SCD

**FIDELITY & GUARANTEE INSURANCE CO.,**

    Defendant.

---

## DECISION AND ORDER

---

This diversity action arises from a dispute between Fidelity Insurance and its policyholder, Renaissance MKE. Renaissance, an event venue, sustained extensive vandalism damage in August 2024. Renaissance received an estimate of $1.5 million to repair or replace the damaged property. Fidelity sent Renaissance an estimate of $171,052.68 in March 2025, which was later revised to $198,362.60. Fidelity issued Renaissance an initial payment of $153,955.18 and a supplemental payment of $27,309.92 (in total, $181,265.10). Believing there to be a dispute, Renaissance invoked the appraisal clause in the policy and appointed an appraiser. Fidelity denied the request for appraisal, asserting that it needed to conduct a test clean to determine whether there was a dispute at all.

After Fidelity denied Renaissance's request for appraisal, Renaissance sued Fidelity in state court and Fidelity removed the case to federal court under diversity jurisdiction. On August 28, 2025, Renaissance moved for a declaratory judgment to compel appraisal and for partial summary judgment on a breach of contract claim. Under Rule 34, Fidelity scheduled the test clean for September 2025. I directed each party to provide an update as to how the

test cleaning impacted the pending motion. Only Renaissance responded, saying: at that point, Fidelity had agreed to proceed to appraisal and Fidelity had not produced results from the test clean. Renaissance maintains that the Motion for Declaratory Judgment to Compel Appraisal and Partial Summary Judgment can be resolved regardless of Fidelity's change of heart because its delay in proceeding to appraisal breached the policy.

## BACKGROUND

Renaissance owns an event venue in Milwaukee (Wisconsin) that was insured by a Fidelity[1] insurance policy, effective February 15, 2024, to February 15, 2025. *See* Pl.'s Facts ¶ 2, ECF No. 24; Def.'s Facts ¶ 25, ECF No. 26.[2] The policy covered (among other things) vandalism damage. *See* Def.'s Resp. to Pl.'s Facts ¶ 3. On August 13, 2024, Renaissance MKE sustained extensive vandalism damage and Fidelity was notified the same day. *See* Pl.'s Facts, ¶ 4; Def.'s Facts ¶ 18.

On August 20, 2024, Fidelity's Nick Holzbauer inspected the property with Renaissance's public adjuster Keye Voigt, and Renaissance's representative, Walter Shuk. Def.'s Facts ¶ 20. Following that inspection, Fidelity had an industrial hygienist, JS Held, develop a cleaning protocol. Def.'s Facts ¶ 21. On October 23, 2024, Fidelity's Trevor Jacobs inspected the property again with Renaissance's Voigt and Shuk. Def.'s Facts ¶ 22. This inspection prompted Fidelity to ask JS Held to conduct sampling at the site to update the cleaning protocol specifically related to fire extinguisher particulate. *See* Def.'s Facts ¶¶ 23–

---

[1] Renaissance had been insured by Travelers, an entity affiliated with Fidelity. The parties have stipulated that Fidelity is the proper defendant and that the court should refer to "Fidelity" in lieu of "Travelers." *See* Answer ¶¶ 2–5, ECF No. 8; *see also* Stipulation, ECF No. 7.
[2] Fidelity began numbering its proposed facts where Renaissance left off, beginning with "16" instead of "1." *See* ECF No. 26 at 5. In its response, Renaissance re-numbered Fidelity's proposed facts, beginning with "1" instead of "16." *See* ECF No. 27 at 1. I will use whatever number the party used in the document I am citing.

24. JS Held conducted a test sampling of fire extinguisher particulate in January 2025 and produced an updated report in February 2025. Def.'s Facts ¶¶ 27–28.

Sid Grinker Restoration Inc. also inspected the property in August 2024. Pl.'s Facts ¶ 6. Sid Grinker provided Renaissance with an estimate of $1,552,661.53 to repair and replace damaged property. *See* Pl.'s Facts ¶¶ 6–7.

In November 2024, Fidelity learned that the event venue had shut down its operations in 2022. Pl.'s Resp. to Def.'s Facts ¶¶ 10–11. Under the policy, Fidelity wouldn't cover vandalism damage if the building had been vacant for more than sixty consecutive days before the damage occurred. Pl.'s Resp. to Def.'s Facts ¶ 10. On March 13, 2025, Renaissance provided documentation that the property had not been vacant prior to the vandalism. Pl.'s Resp. to Def.'s Facts ¶ 14.

The parties' proposed facts aren't clear on the exact dates and amounts of Fidelity's estimates and payments. It is undisputed that Fidelity produced an estimate in March 2025 based on JS Held's February Report. *See* Pl.'s Resp. to Def.'s Facts ¶ 15. Fidelity issued Renaissance an initial payment of $153,955.18 at some point, it appears on March 20, 2025, and a supplemental payment of $27,309.92 on April 14, 2025. *See* Def.'s Resp. to Pl.'s Facts ¶ 8; *see also* ECF No. 26-8.

On March 25, 2025, Renaissance invoked the policy's appraisal clause and named an appraiser. *See* Pl.'s Facts ¶ 9. This clause says:

> If we and you disagree on the value of the property or the amount of the loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

3

> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.

Def.'s Resp. to Pl.'s Facts ¶ 10; ECF No. 26-2 at 84. Renaissance says that they invoked appraisal "as a result of the disagreement over the amount of loss." Pl.'s Facts ¶ 9. Fidelity disputes this proposed fact "to the extent that Plaintiff's cited reasoning for invoking appraisal was due to a disagreement over the amount of the loss." Def.'s Resp. to Pl.'s Facts ¶ 9.

On April 14, 2025, Fidelity's Jacobs sent a letter to Renaissance's Voigt detailing the events up to that point and denying Renaissance's request for appraisal. *See* Def.'s Resp. to Pl.'s Facts ¶ 11. Jacobs's email said that, upon receiving the documentation that the property had not been vacant, "Travelers completed its investigation and evaluation of the damages and provided [Renaissance] notice that the loss . . . was being covered. Travelers then issued the undisputed Actual Cash Value Payment on March 20, 2025." ECF No. 26-8. Fidelity requested an additional inspection to complete a test clean. Jacobs wrote that the test clean "could very well 'bridge the gap' as you describe the differences in scope in your March 21, 2025 email. Determining whether the cleaning protocol is sufficient or if additional scope is required is essential to our investigation." ECF No. 26-8. Jacobs wrote that until Fidelity could "complete the test cleaning, an appraisal would be premature because the requirement that there be a disagreement over the amount of loss has not been satisfied." ECF No. 26-8.

Fidelity argues that this test cleaning falls under Renaissance's contractual post-loss obligations. This is the relevant policy section:

> Duties in the Event of Loss or Damage
>   a. You must see that the following are done in the event of loss or damage to Covered Property:
>     (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine the books and records. Also permit us to take samples of damaged and

4

> undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> . . .
> (8) Cooperate with us in the investigation and settlement of the claim.

Def.'s Br. 4–5, ECF No. 25; ECF No. 26-2 at 84–85.

On April 28, 2025, two weeks after Fidelity denied appraisal, Renaissance filed a complaint in state court bringing four causes of action: (1) breach of contract; (2) bad faith; (3) statutory interest for late payment; and (4) declaratory judgment compelling appraisal. *See* ECF No. 1-1. Fidelity removed the case to federal court under diversity jurisdiction. *See* ECF No. 1. The case was re-assigned to me after the parties consented to magistrate-judge jurisdiction. *See* ECF Nos. 5, 9, 10. On June 26, 2025, Fidelity filed a notice to inspect Renaissance's property under Rule 34 to conduct a test clean with JS Held's "revised testing protocol." *See* ECF No. 12. On July 23, 2025, Renaissance moved for a declaratory judgment compelling appraisal and partial summary judgment, and Renaissance withdrew that motion on August 13, 2025. *See* ECF Nos. 15, 16, 17, 20. Two weeks after withdrawing the motion, on August 28, 2025, Renaissance re-filed its motion for declaratory judgment compelling appraisal and partial summary judgment on the breach of contract claim, along with proposed facts and a brief in support of its motion. *See* ECF Nos. 20–24. Fidelity filed a brief in opposition, responded to the plaintiff's proposed facts, and added its own proposed facts. *See* ECF Nos. 25, 26. Renaissance filed a reply brief and responded to Fidelity's proposed facts. *See* ECF Nos. 27, 28.

The test clean was conducted on September 10, 2025, and the results were expected a few weeks later. *See* Pl.'s Resp. to Def.'s Facts ¶ 23. After receiving no update from the parties, I ordered each party to submit a letter indicating whether the court should rule on the motion

5

as-is; whether the motion would be withdrawn and re-filed; and/or the status of attempts to resolve the dispute. *See* ECF No. 30. Renaissance's letter informed me that Fidelity had agreed to proceed to appraisal, but Renaissance did not withdraw its motion to compel appraisal and maintains that Fidelity's *initial* refusal breached the policy. *See* ECF No. 31. Renaissance pointed out that Fidelity has not produced the results of the test clean nor provided an updated estimate from that testing. *See* ECF No. 31.

## DECLARATORY JUDGMENT STANDARD

The Declaratory Judgment Act permits district courts, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "In deciding whether there is an actual controversy, [courts] focus on whether the facts alleged 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Bell v. Taylor*, 827 F.3d 699, 711 (7th Cir. 2016) (quoting *MedImmune, Inc.*, 549 U.S. at 127).

## SUMMARY JUDGMENT STANDARD

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

6

of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)). "Although [the court] construe[s] all facts and make[s] all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Id.* (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

## DISCUSSION

Renaissance seeks declaratory judgment compelling appraisal and partial summary judgment on its claim that Fidelity breached the policy by initially denying appraisal. I will first address whether the motion for declaratory judgment is moot because Fidelity has agreed to proceed to appraisal. After that, I will address the merits of the motion for declaratory judgment. Finally, I will address whether Renaissance is entitled to summary judgment on its breach of contract claim.

I. **The appraisal issue is not moot.**

Renaissance moved for declaratory judgment to compel Fidelity to engage in the appraisal process. While this motion was pending, Fidelity agreed to proceed to appraisal. *See* ECF No. 31. Renaissance argues that the motion for declaratory judgment is not moot because Fidelity could repeat its conduct in the future. *See id.* Fidelity did not respond to my order requesting an update from each party, so Fidelity has not asserted that the motion is moot nor offered any evidence to prove that it will not repeat its conduct in the future.

Voluntary cessation of an allegedly unlawful practice does not automatically moot a claim. "It is well settled that a defendant's voluntary cessation of a challenged practice does

not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). "The 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203). Put simply, "the party asserting mootness bears the 'heavy' burden of proof on this 'stringent' standard." *Freedom from Religion Found., Inc. v. Concord Cmty. Schs.*, 885 F.3d 1038 (7th Cir. 2018).

Renaissance submits that even though Fidelity has agreed to proceed to appraisal, Fidelity could reverse course in the future by delaying or conditioning appraisal on additional "investigative" steps. *See* ECF No. 31. Fidelity also has not produced the results of the test clean or an updated estimate, "underscore[ing] that its conduct has not been fully corrected." *Id.* The burden of proof is on the party asserting mootness, and Fidelity has not asserted mootness at all, nor submitted any evidence to argue that it will not continue the challenged conduct in the future. I therefore conclude that Fidelity has not met its "heavy burden" to demonstrate mootness.

**II.     By the terms of the policy, Fidelity needed to proceed to appraisal.**

The parties agree that Wisconsin substantive law applies to this diversity action. *See* Pl.'s Br. 4–5, ECF No. 22 (applying Wisconsin law); Def.'s Br. 3, 9 (same). Under Wisconsin law, "[t]he interpretation of language in an insurance policy is governed by 'general principles of contract construction.'" *Weimer v. Country Mut. Ins. Co.*, 575 N.W.2d 466, 472 (Wis. 1998)

8

(quoting *Kuhn v. Allstate Ins. Co.*, 532 N.W.2d 124, 128 (Wis. 1995)). "[T]he construction of an insurance policy presents a question of law." *Johnson Controls, Inc. v. London Mkt.*, 2010 WI 52, ¶ 24, 784 N.W.2d 579, 585 (citing *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 2009 WI 13, ¶ 27, 759 N.W.2d 613, 620). The goal is "to give effect to the intent of the parties as expressed in the language of the policy." *Id.* at 598–99 (quoting *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 665 N.W.2d 857, 864).

"As a general rule, the language in an insurance contract 'is given its common, ordinary meaning,' that is, 'what the reasonable person in the position of the insured would have understood the words to mean.'" *Folkman*, 665 N.W.2d at 865 (quoting Arnold P. Anderson, *Wisconsin Insurance Law* § 1.1(C) (4th ed. 1998)). "When the policy's language is unambiguous, [courts] enforce the contract as written, without resorting to the rules of construction or principles from case law." *Johnson Controls*, 784 N.W.2d at 586 (citing *Plastics Eng'g Co.*, 759 N.W.2d at 620). "However, if the policy language is susceptible to more than one reasonable interpretation, it is ambiguous." *Id.* "[B]ecause the insurer is in a position to write its insurance contracts with the exact language it chooses[,] . . . ambiguity in that language is construed in favor of [the] insured." *Id.* (quoting *Froedtert Mem'l Lutheran Hosp., Inc. v. Nat'l States Ins.*, 2009 WI 33, ¶ 43, 765 N.W.2d 251, 261).

### A. When one party invokes an appraisal clause, the other party must abide by it unless certain defenses apply.

"Appraisal clauses have long been included in property insurance policies." *Badgerland Restoration & Remodeling, Inc. v. Federated Mut. Ins. Co.*, 2024 WI App 36, ¶ 20, 8 N.W.3d 877, 884. "Appraisal clauses are also ubiquitous." *Id.* "If and when one party invokes [the appraisal] clause, the other side *must* abide by it." *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 2009 WI 73, ¶ 34, 768 N.W.2d 596, 605 (emphasis added). "When a policy contains an

9

appraisal clause and one party demands an appraisal, the other party is required to participate in the appraisal process unless certain defenses apply." *Badgerland*, 8 N.W.3d at 885 (citing *Chapman v. Rockford Ins. Co.*, 62 N.W. 422, 426 (1895)).

For example, in *Badgerland Restoration & Remodeling, Inc. v. Federated Mutual Insurance Co.*, the Wisconsin Court of Appeals found that the insured stated a plausible claim for breach of contract when an insurer denied appraisal and no defense applied. When one party invokes an appraisal clause, the other side "must" either abide by it or seek relief in circuit court by arguing that the clause is unenforceable. *See Badgerland*, 8 N.W.3d at 885–86 (quoting *Farmers Auto. Ins. Ass'n v. Union Pac. Ry. Co.*, 768 N.W.2d at 605). An appraisal clause may be unenforceable if the invocation was untimely, improper, or waived. *See id.* In *Badgerland*, "there was a dispute over the value of the loss, [the insurer] refused to abide by the appraisal clause when it was invoked by [the insured] following the completion of . . . repair work, and [the insurer] did not seek relief in court. Accordingly, the complaint states a claim for breach of the policy." *Id. Badgerland*, which summarizes Wisconsin law on appraisal clauses, was not cited by either party.

By the plain language of the appraisal clause, Fidelity needed to proceed to appraisal when it was invoked. The appraisal clause does not include a condition precedent. Fidelity argues that the primacy of post-loss obligations comes from case law, but Wisconsin law requires first looking to whether the contract's language is unambiguous. "Disagree" and "amount of loss" are not defined terms in the policy. A reasonable person in the position of the insured would have understood this appraisal clause to mean that, in the event of a disagreement over amount of loss, either party can demand an appraisal, and then each party will select an appraiser.

10

Fidelity argues that, when Renaissance invoked appraisal, there was not yet disagreement—so that condition precedent hadn't been met. But the undisputed facts show that there was a disagreement. Renaissance provided Fidelity with an estimate of $1,552,661.53 in August 2024. Based on JS Held's February report, Fidelity issued an estimate of $171,052.68 (later revised to $198,362.60) and an initial payment of $153,955.18, (later supplemented by $27,309.92). On March 25, 2025, Renaissance claimed the amount of loss to be $1,552,661.53, while Fidelity claimed the amount of loss to be $171,052.68 (later revised). In its April 14, 2025 response denying appraisal, Fidelity acknowledged there was a "gap" between the two parties' estimates that could potentially be "bridged" by a test clean. *See* Def.'s Resp. to Pl.'s Facts ¶ 11. Based on these undisputed facts, when Renaissance invoked appraisal on March 25, 2025, a reasonable person applying the policy would have understood the parties to disagree on the amount of loss.

*Badgerland* clarifies that, after one party invokes appraisal, the other party must either proceed to appraisal or challenge appraisal in circuit court by arguing the invocation was untimely, improper, waived, or otherwise unenforceable. *See Badgerland*, 8 N.W.3d at 885–86. Fidelity needed to proceed to appraisal or raise a defense. Fidelity does not argue that the invocation was untimely or improper, but rather that Renaissance's cooperation with post-loss obligations was a condition precedent to proceeding to appraisal.

### B. Renaissance fulfilled its post-loss obligations prior to seeking appraisal.

Fidelity is correct that one defense to appraisal is an insured's failure to cooperate with its post-loss obligations. "An insured's failure to cooperate with the insurer provides a valid defense to a breach of contract claim. Whether an insured breached a policy's cooperation clause is typically a question of fact." *See McGraw Prop. Sols. LLC v. Westchester Surplus Lines*

11

*Ins. Co.*, Case No. 22-cv-00396, 2024 U.S. Dist. LEXIS 71782, 2024 WL 1702680, at *10–11 (N.D. Ill. April 19, 2024) (citation modified). However, this defense only applies when "the breach 'substantially prejudices the insurer in defending the primary action,' meaning that the insurer must show that the breach 'actually hampered' its defense." *Id.* (quoting *Piser v. State Farm Mut. Auto. Ins. Co.*, 938 N.E.2d 640, 647, 649 (Ill. App. Ct. 2010)). An insured's cooperation with post-loss obligations is a coverage, not appraisal, question. *See Travelers Cas. Ins. v. Northbrook Crossing Condo. Owner's Ass'n*, Case No. 23-C-1631, 2024 U.S. Dist. LEXIS 139857, 2024 WL 3648086, at *3 (E.D. Wis. July 26, 2024) (*citing SB Holdings I, LLC v. Indian Harbor Ins.*, No. 20-14729, 2021 U.S. App. LEXIS 25862, 2021 WL 3825166, at *1 (11th Cir. 2021) (per curiam)).

Fidelity relies on three district court cases that discuss post-loss obligations and appraisal. In *McGraw Property Solutions LLC v. Westchester Surplus Lines Insurance Co.*, the insured invoked appraisal, the insurer denied appraisal, and the insured sued to compel appraisal. *McGraw*, Case No. 22-cv-00396, 2024 U.S. Dist. LEXIS 71782, 2024 WL 1702680, at *5–6. The insurer denied appraisal as premature because coverage investigation was ongoing, and the insurer requested an "examination under oath" pursuant to the policy's post-loss obligations. *See id.* at *6, *9–10. Illinois law did not directly answer "whether an insured's invocation of a policy's appraisal clause relieves that party of its contractual post-loss duties if the insurer does not engage in appraisal first." *Id.* at *16. Looking to other jurisdictions, the court said this: "Simply put, these courts have held that an insured must fulfill its contractual post-loss duties before it can *seek* appraisal." *Id.* at *17 (emphasis added). The court held that appraisal would be premature because the insurer was still conducting its investigation and

the insured had not yet complied with post-loss obligations, specifically the examination under oath. *See id.* at *18.

In *Travelers Casualty Insurance v. Northbrook Crossing Condominium Owner's Ass'n*, the insured failed to provide documentation to the insurer on repairs that had already been completed. *Northbrook*, Case No. 23-C-1631, 2024 U.S. Dist. LEXIS 139857, 2024 WL 3648086, at *2–3. In *Northbrook*, appraisal was already underway and the issue was compelling the insured's cooperation in the investigation. *Id.* at *2. The court observed: "[a]lthough Wisconsin courts have not addressed this specific question, other jurisdictions have held 'that an insured must fulfill its contractual post-loss duties before it can *seek* appraisal.'" *Id.* at *3 (emphasis added) (quoting *McGraw*, Case No. 22-cv-00396, 2024 U.S. Dist. LEXIS 71782). The court then found that the insured's noncompliance was prejudicial to the insurer because the coverage investigation was ongoing. *Id.* So, the insured needed to cooperate and turn over documentation on completed repairs.

Relying on *Northbrook*, the court came to a similar conclusion in *Travelers Property Casualty Co. v. The Cove Lake Geneva*.[3] *Travelers Prop. Cas. Co. v. The Cove of Lake Geneva, LLC*, No. 23-CV-1641-JPS, Dkt. 31 (E.D. Wis. September 23, 2024). In *The Cove*, the insurer sued the insured and the insured counterclaimed for breach of contract and filed a motion for declaratory judgment compelling appraisal. *Id.* at *1. The court found that the insured did not properly move for declaratory relief and construed its motion as a motion for summary judgment. *See id.* at *3. Generally, the parties agreed to proceed to appraisal, conditioned on limiting the scope of appraisal to exclude items that the insurer had already denied coverage

---

[3] Both parties discuss this case, neither filed a copy of the order as required by Civ. L. R. 7(j)(2) (unpublished cases not available on electronic databases).

for. *See id.* at *6. The insured failed to turn over all requested records, ostensibly in violation of both the policy and the agreed-upon conditions of appraisal. *See id.* at *6–7. The court denied summary judgment, finding these disputed issues of material fact: whether the appraisal was conditioned on the insured's submitting a properly supported and documented proof of loss; whether the insured complied with this condition; and whether the documents sought by the insurer were relevant and necessary. *See id.* at *13.

Renaissance argues that this case is different from *McGraw*, *Northbrook*, and *The Cove* because "[t]hose cases involved insureds who refused to comply with the insurer's ongoing investigation or withheld critical information, preventing the insurer from determining whether coverage even existed. In specific, both [*Northbrook* and *The Cove*] involved an appraisal demand while the insurer was still in need of documents and information portraying the cost of repair from the insured's contractor. Here, there is no such dispute." Pl.'s Reply 4, ECF No. 28. The phase of investigation is one difference, although Fidelity argues that investigation of some sort was still ongoing here. More importantly, the insureds in *McGraw*, *Northbrook*, and *The Cove* didn't comply with obligations specifically contracted for in the policy. Second, they didn't comply prior to *seeking* appraisal. And third, the insureds' noncompliance prejudiced the insurer in some way.

First, Fidelity doesn't satisfactorily explain how the post-loss obligations clause required Renaissance to submit to a test clean. According to the policy, the insured must, "As often as may be *reasonably required*, permit [Fidelity] to inspect the property proving the loss or damage and examine the books and records"; "permit [Fidelity] to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records"; and "cooperate with us in the investigation and

14

settlement of the claim." Fidelity doesn't explain how the test clean falls into one of these categories. Fidelity also doesn't explain why this test clean was "reasonably required" when it relied on the February Report to produce an estimate, and neither that report nor the estimate was conditioned on a test clean. Unlike book and record inspection, a "test clean" doesn't clearly fit into one of the post-loss obligations that the parties contracted for. It might have been a reasonable means of achieving compromise, but that is different than saying it is a contractual prerequisite.

Second, Renaissance complied with the post-loss obligations prior to seeking appraisal. *McGraw* says that "courts have held that an insured must fulfill its contractual post-loss duties *before it can seek appraisal*." *McGraw*, Case No. 22-cv-00396, 2024 U.S. Dist. LEXIS 71782, at *17 (emphasis added). In *McGraw*, *Northbrook*, and *The Cove*, the insureds failed to cooperate with a duty that existed prior to their seeking appraisal. The insured must fulfill its post-loss duties before it can *seek* appraisal—not before appraisal can *proceed*. Here, Renaissance fulfilled its post-loss duties prior to seeking appraisal; even if a "test clean" could be considered a post-loss obligation, it was only introduced after Renaissance sought appraisal.

Third, Fidelity does not argue that Renaissance's alleged non-compliance with the post-loss obligations prejudiced Fidelity in any fashion. "An insured's failure to cooperate with the insurer provides a valid defense to a breach of contract claim. . . . this is only a defense where the breach substantially prejudices the insurer in defending the primary action." *McGraw*, Case No. 22-cv-00396, 2024 U.S. Dist. LEXIS 71782, at *10–11 (citation modified). Fidelity does not counterclaim for a breach of contract here, but caselaw suggests that this is the standard to avoid appraisal based on one party's non-cooperation with post-loss duties.

15

*See id.*; *see also Bagderland*, 8 N.W.3d at 885–86 (collecting cases) ("[A] party opposing invocation of appraisal clause must show that the clause is unenforceable based on waiver through the conduct of the party seeking appraisal *and resulting prejudice*.") (emphasis added). Here, Fidelity does not argue that its investigation or appraisal process was prejudiced by Renaissance's conduct.

Renaissance complied with the post-loss obligations prior to seeking appraisal. Fidelity has not shown that Renaissance's conduct renders the appraisal clause unenforceable. I find that, under Wisconsin law, Fidelity was obligated to proceed to appraisal when the clause was invoked.

**III. Renaissance is not entitled to summary judgment on its breach of contract claim.**

To prevail on a breach of contract claim in Wisconsin, Renaissance must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018) (citing *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008)). It is undisputed that the insurance policy is a valid contract. *See DeChant v. Monarch Life Ins. Co.*, 547 N.W.2d 592, 596 (Wis. 1996) ("We recognize that an insurance policy represents a unique type of legally enforceable contract." (citation omitted)). Thus, the issue is whether Renaissance has produced sufficient evidence from which a reasonable jury could find that Fidelity breached that contract. In the insurance context, a breach "is a 'failure to pay the claim in accordance with the policy.'" *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 25, 798 N.W.2d 467, 474 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 374 (Wis. 1978)).

The relevant facts are largely undisputed, but the parties barely briefed whether the facts entitle Renaissance to judgment as a matter of law. The briefs focus on the declaratory

16

judgment motion to compel appraisal. In its complaint, Renaissance claims that Fidelity breached the policy in eight ways:

> (1) Failure to properly and timely adjust the claim;
> (2) Failure to conduct a diligent investigation;
> (3) Failure to relay accurate information concerning the terms and conditions of the policy;
> (4) Failure to issue timely payment of the underlying insurance claim in an appropriate amount;
> (5) Failure to assist plaintiff's efforts to obtain timely payment;
> (6) Failure to acknowledge and indemnify plaintiff for all damage arising out of a covered loss;
> (7) Failure to cure its policy breach;
> (8) Failure to abide by plaintiff's appraisal demand.

*See* Compl. 7, ECF No. 1-1. In its motion for summary judgment, Renaissance does not specify on which basis the undisputed facts show that Fidelity breached the policy. Renaissance's short discussions of summary judgment cite no case law or proposed facts. *See* Pl.'s Reply 6, ECF No. 28; Pl's Br. 7, ECF No. 22. As most of the parties' briefing focused on appraisal, Renaissance may have been moving for summary judgment on theory number eight, namely, that Fidelity's denying appraisal breached the policy. Renaissance cites no authority showing that delayed or compelled appraisal can form the basis for liability on a breach of contract claim.

Additionally, courts have held that the acceptance and payment of an appraisal award bars an insured's breach of contract claim. *See Andazola v. Travelers Pers. Ins. Co.*, No. 2024AP750, 2025 Wisc. App. LEXIS 875 (Wis. Ct. App. Sept. 30, 2025) (per curiam); *Meier v. Wadena Ins. Co.*, 95 F.4th 514, 518 (7th Cir. 2024) (finding no breach of contract or bad faith where insurer paid out a final binding award); *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264, 267–68 (5th Cir. 2021) ("Although the issuance of an appraisal award does not bar a breach of contract claim, payment and acceptance of the award does. . . . This rule applies

17

even when the appraisal award values the covered loss in an amount greater than the insurer had initially assessed and even when the insurer initially denies the insured's claim." (citations omitted)). Here, appraisal is now underway, which means any breach claim would not yet be ripe.

## CONCLUSION

The motion for declaratory judgment to compel appraisal is not moot because Fidelity did not assert mootness or present evidence to show that it will not repeat the challenged conduct in the future. I will **GRANT** the plaintiff's motion for declaratory judgment finding Fidelity needed to proceed to appraisal when it was invoked. Because Fidelity has agreed to proceed to appraisal, I will not issue an order compelling appraisal unless Fidelity further delays or conditions appraisal. I will **DENY** without prejudice the plaintiff's motion for summary judgment pursuant to FRCP 56, ECF No. 21. The clerk will set this matter on the calendar for a Rule 16 scheduling conference.

**SO ORDERED** this 12th day of January, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge